Filed 11/20/25  P. v. Harris CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>BERNARD JEROME HARRIS,<br><br>     Defendant and Respondent. | B336133<br><br>(Los Angeles County<br> Super. Ct. No. NA078478) |

        APPEAL from an order of the Superior Court of Los Angeles County, William C. Ryan, Judge.  Affirmed.

        Verna Wefald and Susan S. Bauguess, under appointment by the Court of Appeal, for Defendant and Appellant.

        Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, and Thomas C. Hsieh, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

Appellant Bernard Jerome Harris (Harris) was convicted of murder and attempted murder in 2009. Harris petitioned for resentencing under former Penal Code section 1170.95,[1] since renumbered as section 1172.6. (Stats. 2018, ch. 1015, § 4; Stats. 2022, ch. 58, § 10.) The trial court denied Harris's petition in 2020, relying solely on language from the opinion resolving Harris's direct appeal. This division reversed, directing the trial court to make its own assessment of the evidence. (*People v. Harris* (Dec. 8, 2021, B306109) [nonpub. opn.].) The trial court did so, and again denied Harris's petition. Harris now appeals from the second denial. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 30, 2007, Richard Theus (Theus) and a companion were beaten and robbed by members of the "Sex, Money, Murder" gang. Theus was a member of a rival gang, the "Boulevard Crips." The attack occurred on territory claimed by Sex, Money, Murder.

Later that evening, Derick Holman (Holman), who associated with members of Sex, Money, Murder, and Marcus Peters, himself affiliated with Sex, Money Murder, walked to a gas station in the gang's territory. Holman spotted Theus walking in an alley nearby.

While Holman and Peters were at the gas station, a silver car pulled up and a man later identified as Harris got out. Harris approached Holman and Peters and asked if they were members of Sex, Money, Murder. They said they were not. Harris returned to the car. This interaction was caught on

---

[1]    All future statutory references are to the Penal Code, unless otherwise stated.

the gas station security camera; according to the time stamp on the footage, it occurred at 9:50 p.m.

Holman and Peters left the gas station and walked toward an apartment complex. They were joined by a third person, Aaron Thomas. As they walked, the silver car from the gas station, with three men inside, passed by, pulled into an alley, and parked. Theus got out of the car and started shooting at Holman, Peters, and Thomas. Thomas escaped unscathed, but Peters was killed and Holman was wounded three times. The police were called at 9:53 p.m.

Theus and Harris were tried together. (*People v. Theus* (May 18, 2011, B217486) [nonpub. opn.].)[2] Prior to the trial, Theus passed a note to Harris by placing it in a file and leaving the file on a table in the courtroom for Harris to collect. (*Ibid.*) The note indicated that Theus was not a "snitch."

The jury convicted Harris and Theus of the murder of Peters (§ 187, subd. (a)) and attempted murders of Holman and Thomas (§§ 664/187 subd. (a)).[3] The trial court sentenced Harris to imprisonment for 105 years to life, plus 20 years. This division affirmed that result.[4] (*Theus, supra,* B217486.)

In January 2019, Harris petitioned the trial court for relief under former section 1170.95. He argued he was convicted under the natural and probable consequences doctrine, and attached a copy of the natural and probable consequences jury instruction given in his case. The trial court appointed counsel and issued an order to show cause why Harris should not

---

[2]    Harris's Motion for Judicial Notice of Documents from Court of Appeal case No. B217486, filed June 25, 2025, is granted.

[3]    The jury also found true a series of enhancements.

[4]    The prior panel modified the abstract of judgment to correct a series of clerical errors. (*Theus, supra,* B217486.)

be resentenced. After the hearing, the court denied the petition, holding that this division "already deemed [Harris] as an aider and abettor" in its opinion on Harris's direct appeal.

Harris appealed that denial, and this division reversed, directing the court to make an independent assessment of the evidence rather than rely solely on the prior opinion. (*Harris, supra,* B306109.) On August 2, 2023, the trial court held another hearing, as directed. On September 21, 2023, the trial court again denied the petition. The court ruled Harris was guilty as a direct aider and abettor, because the evidence showed he acted as a "guide" or "spotter" for Theus.

Harris appealed.

## DISCUSSION

### I. *Governing Law*

In 2019, the legislature updated the murder statutes to limit vicarious liability for that offense. (Stats. 2018, ch. 1015, §§ 1-3; see *People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).) The legislature also provided a procedure for defendants to request resentencing if they had been convicted under previous versions of the law. (Stats. 2018, ch. 1015, § 4; see *Lewis, supra,* 11 Cal.5th at p. 959.) These changes were later expanded to cover convictions for attempted murder as well. (Stats. 2021, ch. 551.)

A person convicted of murder may be eligible for resentencing if they were convicted of felony murder, or under the natural and probable consequences doctrine, or on any "other theory under which malice is imputed to a person based solely on that person's participation in a crime." (§ 1172.6, subd. (a).) However, a person convicted of attempted murder is only eligible for resentencing if they were convicted under the natural and

4

probable consequences doctrine.  (*Ibid.*; *People v. Lovejoy* (2024) 101 Cal.App.5th 860, 865.)

A petition seeking resentencing under section 1172.6 must demonstrate, among other things, that the petitioner could not presently be convicted of murder or attempted murder due to the changes in sections 188 and 189.  (§ 1172.6, subd. (a); *People v. Wilson* (2023) 14 Cal.5th 839, 869 (*Wilson*).)  Upon receipt of a facially compliant petition, the trial court must "determine whether the petitioner has made a prima facie case for relief." (§ 1172.6, subd. (c).)  If the petitioner has made such a case, the court must issue an order to show cause.  (*Ibid.*)  The court must then hold an evidentiary hearing, at which the prosecution has the burden to prove beyond a reasonable doubt that the petitioner is guilty of murder or attempted murder under current law.  (§ 1172.6, subds. (d)(1) & (3); *Wilson, supra,* 14 Cal.5th at p. 869.)

We review the trial court's factual findings for substantial evidence. (*People v. Rodriguez* (2024) 103 Cal.App.5th 451, 457.)  We review the court's application of those facts to the law de novo.  (*Ibid.*)

II.    *Analysis*

A defendant is guilty of aiding and abetting a crime if he or she (1) has knowledge of the perpetrator's unlawful purpose, (2) intends to commit, encourage, or facilitate the commission of the crime, and (3) aids, promotes, encourages, or instigates the commission of the crime.  (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1054.)  To aid and abet attempted murder, the defendant must share the perpetrator's intent to kill.  (*Ibid.*)

Here, the evidence supports the trial court's conclusion that Harris shared Theus's intent.  It is not disputed that Harris and Theus were both

members of the Boulevard Crips. Theus had been attacked earlier in the day by members of Sex, Money, Murder. Theus was observed by one of the victims walking near a gas station in territory claimed by Sex, Money, Murder. At nearly the same time, Harris got out of a car at the gas station and asked two of the victims if they were members of Sex, Money, Murder. After receiving their answer, Harris went back to the car. Three or four minutes later (perhaps even less), that same car pulled in near the victims. Theus emerged and began shooting. This evidence clearly supports the court's finding that the shooting occurred in retaliation for the assault on Theus, and Harris was assisting Theus in a search for targets.

Harris argues the trial court "failed to acknowledge the law" because it failed to recite the elements of aiding and abetting or discuss the intent requirements in detail. But we presume the court knows and follows the law; Harris has the burden to affirmatively demonstrate otherwise. (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573–1574.) The court's order correctly states that, to be convicted under current law, Harris must have intended to kill. Harris cites no authority indicating a more detailed recitation is required.

Harris also asserts there is no evidence to show he had any knowledge of, much less shared, Theus's intent. But the court is entitled to make inferences from Harris's presence and association with Theus and his conduct just prior to the shooting. (*People v. Glukhoy* (2022) 77 Cal.App.5th 576, 599.) There could be little mystery about Theus's intent: he was attacked by members of a rival gang, and on the same day he went to that gang's territory and opened fire on three people without preamble. Harris, a fellow member of Theus's gang, was at the scene with him (on hostile territory) and

6

the two emerged from the same car.  The two were there together, and the court could infer that Harris knew why Theus was there.

Further, Harris got out of the car to ask the eventual victims a single question: whether they were members of the rival gang Theus was targeting.  This is more than mere presence or association.  The court could infer from this that Harris was helping Theus find a target, and therefore shared his intent to kill.  As Harris himself points out, there was no evidence Harris and Theus had any prior relationship other than being members of the same gang.  There was no reason for Harris to be there and ask that question, other than to help Theus find a target for his retaliatory shooting.

Harris argues two additional points.  First, he contends that no evidence places him in the silver car at the same time as Theus.  And it is true that Holman did not precisely testify to seeing Harris get back into the car; his exact words were that Harris "walked away . . . towards, back the car."  But it is reasonable to infer that when a person returns to the car they left, they got back in that car.  As the trial court pointed out, the fact that Harris was in rival gang territory supplies an additional reason to believe he would not stay afoot.  And even if Harris were somehow never in the car at the same time as Theus, the fact that it was the same car, that Harris emerged to ask the victims that single question about their gang affiliation, and that they were attacked by Theus almost immediately thereafter, permits an inference that their activities were coordinated and the intent to kill was shared.

Second, Harris asserts that the note passed by Theus about "snitching" does not prove his guilt.  In isolation, that is true, and the People do not contest the point.  However, the evidence discussed above is sufficient to

prove Harris's guilt, and the note tends to confirm the inferences the court made from that evidence.

## DISPOSITION

The order of the trial court is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                        ZUKIN, P. J.

We concur:



COLLINS, J.



TAMZARIAN, J.

8